UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EMIGDIO GONZALEZ-PANO,

    Defendant.

Case No. 25-cr-20542

Honorable Robert J. White

---

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

---

I.    <u>Introduction</u>

A federal grand jury indicted Emigdio Gonzalez-Pano on a single count of unlawfully reentering the United States. The United States Department of Homeland Security deported Gonzalez-Pano to Mexico previously after an immigration judge ordered his removal in August 2008.

Gonzalez-Pano now moves to dismiss the indictment. (ECF No. 22). The government responded in opposition. (ECF No. 25). Gonzalez-Pano filed a reply. (ECF No. 27). Both sides filed supplemental briefs. (ECF Nos. 30-31). The Court held an evidentiary hearing on the motion on March 26, 2026. (ECF No. 32, PageID.239). For the following reasons, the motion is denied.

II.    Background

   A.    *Factual History*

Gonzalez-Pano is a Mexican citizen. (ECF No. 25-4, PageID.190).    He entered the United States unlawfully in the summer of 2004 and, again, in the winter of 2007. (ECF No. 25-2, PageID.188; ECF No. 25-3, PageID.189).    After encountering law enforcement on both occasions, he agreed to return to Mexico voluntarily. (ECF No. 25-2, PageID.188; ECF No. 25-3, PageID.189).    He returned to the United States at some point thereafter.

In June 2008, Butler County, Ohio sheriff's deputies arrested Gonzalez-Pano for operating a vehicle while impaired and without a license. (ECF No. 25-4, PageID.190).    Local authorities transferred him to United States Immigration and Customs Enforcement ("ICE") custody after a state court adjudicated his criminal case. (*Id.*).

While in local custody, Gonzalez-Pano executed a "Stipulated Request for Removal Order and Waiver of Hearing." (ECF No. 25-5, PageID.191-95).    The stipulated request, among other things, waived Gonzalez-Pano's right to appear before an immigration judge personally as well as his right to appeal the judge's removal order. (*Id.*, PageID.193, ¶¶ 10, 13).    Gonzalez-Pano further acknowledged that he would be "removed from the United States without a hearing." (*Id.*).    On August 8, 2008, an immigration judge accepted the stipulation, determined that

2

Gonzalez-Pano waived his rights knowingly, voluntarily, and intelligently, and ordered him removed to Mexico. (ECF No. 25-6, PageID.196-97).  Authorities physically removed him from the United States at Laredo, Texas, four days later. (ECF No. 22-2, PageID.61).  But Gonzalez-Pano returned to the United States yet again.

On July 1, 2025, Sterling Heights, Michigan police officers arrested Gonzalez-Pano for leaving the scene of an accident resulting in a personal injury. (ECF No. 25-7, PageID.198, 200).  The officers contacted United States Border Patrol after Gonzalez-Pano identified himself with a Mexican passport.[1] (*Id.*, PageID.199).  They transported him to Macomb County jail, where federal authorities eventually took him into custody. (*Id.*, PageID.199-200).

B.     *Procedural History*

On July 22, 2025, a grand jury indicted Gonzalez-Pano on one count of unlawfully reentering the United States, 8 U.S.C. § 1326(a). (ECF No. 12).  Meanwhile, Gonzalez-Pano moved to reopen the August 2008 removal order in immigration court. (ECF No. 22-3, PageID.72-83).  An immigration judge granted the motion initially but later denied it upon reconsideration. (ECF No. 25-8, PageID.201-02).  Gonzalez-Pano represents that he has since appealed the

---

[1] Border Patrol informed the Sterling Heights officers that Gonzalez-Pano was "wanted for non-compliance related to juvenile sexual assaults." (ECF No. 25-7, PageID.199).

immigration judge's reconsideration order to the Board of Immigration Appeals. (ECF No. 22, PageID.50, ¶ 7).  That appeal remains pending. (*Id.*).

III.    Analysis

8 U.S.C. § 1326(a) prohibits (with certain exceptions inapplicable here) an alien who "has been denied admission, excluded, deported, or removed" from the United States from "enter[ing], attempt[ing] to enter, or [being] at any time found in, the United States."  Gonzalez-Pano attacks the unlawful reentry charge on two fronts: (1) by challenging the finality of the underlying August 2008 removal order, and (2) by seeking to invalidate the removal order collaterally pursuant to 8 U.S.C. § 1326(d).

*A.    Finality*

An immigration judge's removal order "becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39; *see also id.* at § 1240.14.  Because Gonzalez-Pano executed an appeal waiver, the August 2008 removal order became final when the immigration judge issued it – on August 8, 2008. (ECF No. 25-6, PageID.197; *see also* ECF No. 25-5, PageID.193, ¶ 13).

Gonzalez-Pano contends that the indictment must be dismissed because the ongoing appeal of the denial of his motion to reopen the August 2008 removal order

renders the 2008 order non-final. (ECF No. 22, PageID.50, ¶ 8).  This view is incorrect.

"A petitioner generally has a right to make one motion to reopen removal proceedings (subject to several limitations)." *Sanchez-Gonzalez v. Garland*, 4 F.4th 411, 414 (6th Cir. 2021); *see also* 8 U.S.C. § 1229a(c)(7).  However, "[i]f . . . an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5).

Since Gonzalez-Pano reentered the United States illegally after his previous removal, the August 2008 removal order cannot be reopened and remains final. *See Sanchez-Gonzalez*, 4 F.4th at 415; *see also Martinez v. Larose*, 968 F.3d 555, 563 (6th Cir. 2020) (holding that a reinstated removal order under 8 U.S.C. § 1231(a)(5) is final and the petitioner "cannot challenge the prior removal order by seeking to have it reopened or reviewed.").  The finality of the August 2008 removal order does not, as a result, provide a basis to dismiss the indictment.

B.    *Collateral Challenge to the August 2008 Removal Order*

That leaves the collateral challenge.  Criminal defendants charged with unlawful reentry may collaterally attack the validity of a prior removal order when:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued

improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also United States v. Hernandez-Ruiz*, 716 F. App'x 534, 535 (6th Cir. 2018).  "[E]ach of the statutory requirements of §1326(d) is mandatory." *United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021); *see also United States v. Flores-Perez*, 1 F.4th 454, 456-57 (6th Cir. 2021).

In the stipulated request for removal, Gonzalez-Pano acknowledged that the factual allegations in his notice to appear "were true and correct" and that he "should be removed from the United States based on those charges." (ECF No. 25-2, PageID.192, ¶ 5).  He waived his "right to appear before an immigration judge" and recognized that he would be "removed from the United States without a hearing." (*Id.*, PageID.193, ¶ 10).  And he relinquished his "right to appeal the written order for my removal from the United States." (*Id.*, PageID.193, ¶ 13).  This last waiver barred Gonzalez-Pano "from exhausting [his] administrative remedies, and § 1326(d) prevents him from obtaining collateral relief." *Hernandez-Ruiz*, 716 F. App'x at 535; *see also United States v. Martinez-Rocha*, 337 F.3d 566, 569 (6th Cir. 2003).

Now, Gonzalez-Pano may invalidate the appeal waiver on the ground that he did not make it knowingly and voluntarily. *See Hernandez-Ruiz*, 716 F. App'x at 535; *see also Martinez-Rocha*, 337 F.3d at 569.  And he is making that argument here. (ECF No. 22, PageID.50-51, ¶ 8; PageID.54-55).  But he fails to demonstrate

his entitlement to the requested relief. *See Hernandez-Ruiz*, 716 F. App'x at 535 (placing burden on the defendant); *see also Martinez-Rocha*, 337 F.3d 566, 568 (6th Cir. 2003).

The evidence shows that Butler County Sheriff's Deputy April Wilson provided Gonzalez-Pano with a list of free legal services.[2] (ECF No. 25-4, PageID.190).  She "explained the contents and meaning" of the stipulation to Gonzalez-Pano "in the language which [he] understands," *i.e.*, Spanish. (ECF No. 25-5, PageID.195).  The stipulation is also translated into Spanish. (ECF No. 25-5). Gonzalez-Pano checked the Spanish portion of the form that translates to English as, "I have read or I have had read to me in the language I understand, this entire document.  I fully understand its consequences.  I submit this request for removal voluntarily, knowingly, and intelligently.  I realize that by signing this document, I will be removed from the United States." (*Id.*, PageID.194).  And he certified that "this stipulated request has been translated to me from the English language to Spanish language, and that all the information I have given in the 'Stipulated

---

[2] Deputy Wilson performed these immigration functions on behalf of ICE pursuant to what is known as the "287(g) Program." (ECF No. 32, PageID.307, p. 69:1-20). The program authorizes state and local law enforcement agencies to "function" as "immigration officer[s] in relation to the investigation, apprehension, or detention of aliens in the United States . . . to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1).  To participate in the program, state and local law enforcement officers must be "determined by the Attorney General to be qualified" to perform these functions. *Id.*  And the officers must "receive[ ] adequate training regarding the enforcement of relevant Federal immigration laws." *Id.* at § 1357(g)(2).

Request' is true and correct." (*Id.*) (underline in original).  All these factors indicate that Gonzalez-Pano understood the stipulation's contents and that he executed the appeal waiver knowingly and voluntarily.

Gonzalez-Pano disagrees.  He disavows all the stipulation's waivers and representations in a recent affidavit, claiming that he did not understand their import. (ECF No. 22-4, PageID.150-51).  This line of argument is unconvincing.

At the evidentiary hearing, Gonzalez-Pano did not testify credibly.  He could not recount the basic circumstances of how he came to execute the stipulated request for removal.  He did not remember whether anyone had reviewed the stipulation's terms with him in Spanish. (ECF No. 32, PageID.254-63, pp.16:2-3, 17:18-18:22, 19:17-20:1, 20:25-21:19, 22:5-10, 18-22, 23:21-24:4, 10-16, 24:22-25:3).  And he could not recall whether the Ohio state court had ever convicted him of drunk driving in 2008, even though he acknowledged the prosecution as "a very significant event" in his life and that he had served approximately 20 days in county jail on that same charge. (*Id.*, PageID.275-76, 285, pp.37:12-17, 38:2-7, 12-17, 47:3-8, 12-22).

On the other hand, Deputy Wilson testified that while she could not remember her interactions with Gonzalez-Pano specifically, she always read legal documents to Spanish-speaking detainees in Spanish regardless of their ability to read. (*Id.*, PageID.311, 317, pp. 73:10-12, 79:13-17).  She attested that she would have been "out of compliance" with ICE policy had she failed to read legal documents to

Spanish-speaking detainees in Spanish. (*Id.*, PageID.311, p. 73:13-15). She disclaimed that she had ever "simply hand[ed] an inmate a document for them to sign without verifying that they were able to read and without reading it to them." (*Id.*, PageID.311, p.73:16-19). Although Deputy Wilson admitted that she sometimes has difficulty comprehending certain Spanish dialects, she fully understands Spanish-speakers who, like Gonzalez-Pano, hail from Mexico. (*Id.*, PageID.308-09, pp.70:23-71:4). And she confirmed that she would never have certified on the stipulation that she had explained its "contents and meaning" to Gonzalez-Pano if she had not actually done so. (*Id.*, PageID.314-15, pp. 76:14-77:1).

Considering the executed stipulated request for removal, Deputy Wilson's unrefuted testimony, and his own inability to remember essential facts, Gonzalez-Pano cannot meet his burden of showing that he executed the appeal waiver unknowingly and involuntarily.

Lastly, insofar as Gonzalez-Pano claims that he lacked the assistance of counsel, he does not dispute that Deputy Wilson provided him with a list of free legal services. (ECF No. 25-4, PageID.190). And, at any rate, the Due Process Clause in the Fifth Amendment to the United States Constitution "simply does not guarantee the right to counsel for aliens at civil removal hearings." *United States v. Silvestre-Gregorio*, 983 F.3d 848, 853 (6th Cir. 2020) (quotation omitted); *see also Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018). So Gonalez-Pano's decision to forgo

retaining legal representation (whatever the reason) is not a sufficient ground to invalidate the stipulation, and the resulting removal order, collaterally.

Because Gonzalez-Pano fails to proffer enough evidence to show that he did not knowingly, voluntarily, and intelligently waived his appellate rights in the stipulated request for removal, he cannot establish that he exhausted the administrative remedies available to challenge the August 2008 removal order.  And without this required showing, Gonzalez-Pano cannot obtain collateral relief under section 1326(d).[3] *See Palomar-Santiago*, 593 U.S. at 329.

C.      *Supplemental Argument – Due Process*

One final point.  As mentioned earlier, both sides filed post-hearing supplemental briefs. (ECF Nos. 30-31).  In Gonzalez-Pano's submission, he asserts that the Fifth Amendment's Due Process Clause entitled him to a hearing before an immigration judge, who would be obligated to advise him of his eligibility for a voluntary departure. (ECF No. 30, PageID.225-26).  This contention lacks merit.

A noncitizen "has no constitutional right to be informed of eligibility for, or to be considered for, discretionary relief," such as a voluntary departure. *United*

---

[3] This finding likewise precludes Gonzalez-Pano's assertion that the entry of the August 2008 removal order was fundamentally unfair. (ECF No. 22, PageID.54-55). *See* 8 U.S.C. § 1326(d)(3).

*States v. Estrada*, 876 F.3d 885, 888 (6th Cir. 2017); *see also Silvestre-Gregorio*, 983 F.3d 848, 857 (no constitutional right to be informed of eligibility for "pre-conclusion voluntary departure"); *cf. Shtyllaku v. Gonzales*, 252 F. App'x 16, 20 (6th Cir. 2007) (holding that there is no due process liberty interest in a post-conclusion voluntary departure because "[t]he privilege of voluntary departure is a matter of administrative discretion").

Even assuming this right exists, Gonzalez-Pano cannot demonstrate the prejudice necessary to establish a due process violation. *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004) (stating that "proof of prejudice is necessary to establish a due process violation in an immigration hearing."). When an immigration judge grants a noncitizen's request for voluntary departure, the judge must enter an alternate order of removal. *See* 8 U.S.C. § 1229c(b)(1); 8 C.F.R. § 1240.26(d). That order of removal is "subject to reinstatement" in the event the noncitizen returns to the United States unlawfully. *Shtyllaku*, 252 F. App'x at 20; *see also* 8 U.S.C. § 1231(a)(5).

Here, Gonzalez-Pano did in fact return to the United States illegally, which would have triggered the reinstatement of any previously issued alternate removal order. *See Shtyllaku*, 252 F. App'x at 20; *see also Ramos-Ramos v. Sec'y, Dep't of Homeland Sec.*, No. 25-3205, 2025 U.S. App. LEXIS 32324, at *5-6 (6th Cir. Dec.

11

8, 2025).  So in the end, Gonzalez-Pano would have found himself in the same legal predicament that he confronts today.  Accordingly,

IT IS ORDERED that Gonzalez-Pano's motion to dismiss the indictment (ECF No. 22) is denied.

Dated: April 14, 2026                              s/ Robert J. White
                                                   Robert J. White
                                                   United States District Judge